DOCKET NO. B-93-009
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 01 1997

Michael N. Milby, Clerk of Court

UNITED STATES OF AMERICA,

Plaintiff-Respondent,

vs.

JUAN RAUL GARZA,

Defendant-Movant.

B-97-273

MOTION TO VACATE THE DEFENDANT'S
SENTENCE AND FOR A NEW TRIAL UNDER
28 U.S.C. 2255 AND RULE 33 OF THE
FEDERAL RULES OF CRIMINAL PROCEDURE

STEVEN C. LOSCH
Attorney for Defendant-Movant
906 Delia Drive
Longview, Texas 75601
903-234-1373

GREGORY WIERCIOCH
412 Main St.
Houston, Tx. 77002
713-222-7788

7

## TABLE OF CONTENTS

PROCEDURAL HISTORY..........................................1

CLAIMS FOR RELIEF...........................................2

    I.   THE FIFTH CIRCUIT VIOLATED MR. GARZA'S EIGHTH AMENDMENT RIGHT TO MEANINGFUL APPELLATE REVIEW BY AFFIRMING HIS DEATH SENTENCE ON DIRECT APPEAL WITHOUT CONSIDERING HIS CONSTITUTIONAL CHALLENGE TO THE EVIDENCE OF ELEVEN AGGRAVATING CIRCUMSTANCES THAT THE JURORS WERE INSTRUCTED TO WEIGH AGAINST THE MITIGATING FACTORS......2

    II.  MR. GARZA WAS DENIED DUE PROCESS OF LAW AT THE PUNISHMENT STAGE OF HIS CAPITAL TRIAL BECAUSE HE DID NOT HAVE A FAIR OPPORTUNITY TO DENY OR EXPLAIN THE GOVERNMENT'S QUESTIONABLE EVIDENCE OF HIS INVOLVEMENT IN FOUR EXTRANEOUS UNADJUDICATED MURDERS THAT WERE COMMITTED IN MEXICO, WHERE HE HAD NO RIGHT TO COMPULSORY PROCESS AND NO PROTECTION AGAINST THE SUPPRESSION, DESTRUCTION OR FABRICATION OF EVIDENCE BY THE POLICE....................8

    III. MR. GARZA WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL BECAUSE THE FIFTH CIRCUIT CORRECTLY REFUSED TO CONSIDER A WINNING CHALLENGE TO AN UNCONSTITUTIONAL PERMISSIVE JURY INSTRUCTION ABOUT CONSIDERATION OF NON-STATUTORY MITIGATING CIRCUMSTANCES THAT HIS APPELLATE ATTORNEYS INADEQUATELY BRIEFED IN A CONCLUSORY FOOTNOTE.................................21

PRAYER FOR RELIEF..........................................29

VERIFICATION...............................................30

CERTIFICATE OF SERVICE.....................................31

i

DOCKET NO. B-93-009
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES OF AMERICA,

Plaintiff-Respondent,

vs.

JUAN RAUL GARZA,

Defendant-Movant.

MOTION TO VACATE THE DEFENDANT'S SENTENCE AND FOR A NEW TRIAL UNDER 28 U.S.C. § 2255 AND RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

JUAN RAUL GARZA (hereafter referred to as Mr. Garza) moves through his undersigned counsel, pursuant to 28 U.S.C. § 2255 and Fed. R. Crim. P. 33, to vacate his sentence of death, order a new trial on punishment or, alternatively, a new direct appeal and stay his execution until a final judgment on this motion is entered.

PROCEDURAL HISTORY

On January 29, 1993, Mr. Garza was convicted, after a jury trial in the Brownsville Division of the United States District Court for the Southern District of Texas before the Honorable Filemon B. Vela, of operating a continuing criminal enterprise, (hereafter referred to as a CCE), three counts of killing in

1

079

furtherance of a CCE, five violations of drug laws and money laundering. The jury sentenced Mr. Garza to death for the three counts of killing in furtherance of a CCE on August 2, 1993. Judge Vela sentenced him to prison terms for the other crimes.

Mr. Garza's direct appeal was consolidated with the appeal of his separately tried codefendant, Manuel Flores. The Fifth Circuit affirmed Mr. Garza's convictions and sentences on September 1, 1995, in **United States v. Flores and Garza**, 63 F.3d 1342 (5th Cir. 1995). His motion for rehearing en banc was denied without an opinion on December 15, 1995.

The United States Supreme Court denied Mr. Garza's petition for a writ of certiorari. **United States v. Garza**, 117 S. Ct. 87 (1996). His motion for rehearing was denied on December 2, 1996. **United States v. Garza**, 117 S. Ct. 542 (1996).

There are no other appeals or motions pending to attack Mr. Garza's convictions or sentences. He does not have an execution date, but no stay of execution has been entered.

## CLAIMS FOR RELIEF

I. THE FIFTH CIRCUIT VIOLATED MR. GARZA'S EIGHTH AMENDMENT RIGHT TO MEANINGFUL APPELLATE REVIEW BY AFFIRMING HIS DEATH SENTENCE ON DIRECT APPEAL WITHOUT CONSIDERING HIS CONSTITUTIONAL CHALLENGE TO THE EVIDENCE OF ELEVEN AGGRAVATING CIRCUMSTANCES THAT THE JURORS WERE INSTRUCTED TO WEIGH AGAINST THE MITIGATING FACTORS.

The Fifth Circuit affirmed Mr. Garza's death sentence on direct appeal without considering his due process challenge to eleven aggravating circumstances that were based on evidence of his involvement in four uncharged murders in Mexico. This arbitrary and capricious failure to address a significant constitutional claim violated his eighth amendment right to meaningful appellate review.

The Supreme Court has "emphasized repeatedly the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally." **Parker v. Dugger**, 498 U.S. 308, 322 (1991). The right to meaningful appellate review must be jealously protected because "direct appeal is the primary avenue for review of a conviction or sentence" in a capital case. **Barefoot v. Estelle**, 463 U.S. 880, 887 (1983). Collateral review is not an adequate substitute for a meaningful direct appeal because the condemned man loses the right to effective assistance of counsel, **Murray v. Giarratano**, 492 U.S. 1 (1989), the opportunity to persuade the court to create new rules of constitutional law, **Teague v. Lane**, 489 U.S. 288 (1989), the protection of an extremely strict test for harmless error, **O'Neal v. McAninch**, 115 S. Ct. 992 (1995), the benefit of the plain error rule, **United States v. Frady**, 456 U.S. 152 (1982), the right to have a three judge panel independently review the district court's rulings on federal questions and the right to oral argument.

The constitutional claim that the Fifth Circuit ignored on Mr. Garza's direct appeal was briefed with several related claims under a point heading styled "Issue No. 8" which asserted that Mr. Garza

3

was "denied a fair opportunity to defend himself at both the guilt and punishment trials" for a variety of reasons (B. 83).[1] The argument for that point was divided into seven sections that clearly identified each claim of reversible error. In the section styled "Foreign uncharged homicides," Mr. Garza argued that it "was inappropriate to consider evidence of these highly prejudicial foreign events in a capital trial in the United States" because the court did not have jurisdiction in Mexico (B. 95). In the section styled "Garza lacked subpoena Power in Mexico," he argued that he "was unable to prepare an adequate defense to these allegations" because he did not have subpoena power in Mexico and did not have the time, resources and adequate discovery that he needed to obtain evidence from that foreign country without compulsory process (B. 96-97). He concluded the point by asserting that admitting the evidence of the uncharged Mexican murders under those circumstances violated his fifth amendment right to due process (B. 97).

The Fifth Circuit affirmed Mr. Garza's death sentence without expressly referring to this claim or indicating in any manner that it was considered. The court's written opinion addressed several other claims that Mr. Garza raised in "Issue No. 8," but it did not reject the entire point. **United States v. Flores and Garza**, 63 F.3d at 1363-64.

When an appellate court delivers a written opinion that affirms the judgment without mentioning a specific claim that was squarely raised in the brief, as the Fifth Circuit did here, a

---

[1] Mr. Garza's brief on direct appeal is cited as (B.).

4

federal habeas court cannot presume that the claim was considered and rejected. **Smith v. Digmon**, 434 U.S. 332, 333 (1978). The Fifth Circuit stated that "we find no reversible error," **United States v. Flores and Garza**, 63 F.3d at 1351, but that boiler plate statement does not indicate which claims of reversible error the court actually considered. **Miller v. United States**, 1994 U.S. App. LEXIS 18162, *37, reported in table case format, 28 F.3d 1213 (6th Cir. 1994). Such "formulary orders are not meant to convey anything as to the reason for the decision. Attributing a reason is therefore both difficult and artificial." **Ylst v. Nunnemaker**, 111 S. Ct. 2590, 2594 (1991).

Mr. Garza's right to meaningful appellate review certainly required an explanation of why the Fifth Circuit affirmed his death sentence in spite of his due process challenge to the evidence of the uncharged Mexican murders. The Supreme Court has held that the eighth amendment does not allow an appellate court "to affirm a death sentence without a thorough analysis of the role an invalid aggravating factor played in the sentencing process" when the jury was instructed to weigh those specific aggravating circumstances against the mitigating factors. **Stringer v. Black**, 112 S.Ct. 1130, 1136 (1992); accord **Richmond v. Lewis**, 113 S. Ct. 528 (1993); **Sochor v. Florida**, 112 S. Ct. 2113 (1992); **Clemons v. Mississippi**, 494 U.S. 738 (1990). Mr. Garza questioned the validity of eleven specific aggravating circumstances that were based on his involvement in the Mexican killings (R. 258-260).[2] The jury was

---

[2] The transcript is cited as (R.)

instructed to make written findings about the existence of each of those potentially invalid aggravating factors and weigh them against the mitigating circumstances if they were proved beyond a reasonable doubt (R. 258-60, 258; 3567, 3576-77, 3579-82).[3] "[C]lose appellate scrutiny of the import and effect of invalid aggravating factors to implement the well-established Eighth Amendment requirement of individualized sentencing determinations in death penalty cases," **Stringer v. Black**, 112 S. Ct. at 1136, was impossible without first deciding whether any invalid factors were, in fact, placed on the scale.

In **Clemons v. Mississippi**, the Supreme Court held that a capital defendant was denied meaningful appellate review because an appellate court did not give "a detailed explanation based on the record" of its "cryptic," one-sentence conclusion that an invalid aggravating factor was harmless. 494 U.S. at 753. Since an "appellate court's bald assertion that any error of constitutional dimensions was 'harmless' cannot substitute for a principled explanation of how the court reached that conclusion," **Sochor v. Florida**, 112 S. Ct. at 2123 (O'Connor, J., concurring), an appellate court's bald affirmance of a death sentence without any discussion of a constitutional challenge to an aggravating circumstance must also violate the requirement of meaningful appellate review. **Vanderbilt v. Collins**, 994 F.2d 189, 196 (5th Cir. 1994).

---

[3] The page numbers of the record of the punishment stage of the trial are cited in parentheses.

6

4

In **Vanderbilt v. Collins**, the Fifth Circuit agreed with a death row inmate's argument that an appellate court violated his right to meaningful appellate review by reversing his conviction for trial error without considering a challenge to the legal sufficiency of the evidence of an aggravating circumstance that would have precluded the State from seeking the death penalty again if it was successful. 994 F.2d at 196.[4] The violation of Mr. Garza's right to meaningful appellate review was more egregious because his death sentence was affirmed without considering a constitutional challenge to that irrevocable punishment.

**Teague v. Lane** does not bar collateral review of this claim because it does not require the retroactive application of a new rule that was not dictated by precedent when Mr. Garza's motion for rehearing of his petition for a writ of certiorari was denied on December 2, 1996. **Penry v. Lynaugh**, 492 U.S. 302, 314 (1989). The right to meaningful appellate review of invalid aggravating factors in a weighing venue was well established on that date. The narrowest interpretation of that right that any Supreme Court justice has suggested is that "some appellate test must be passed if a death verdict is to stand in a weighing [venue] despite the finding of an invalid aggravating circumstance." **Stringer v. Black**, 112 S. Ct. at 1145 (Souter, Scalia and Thomas, JJ., dissenting). The right would be meaningless if an appellate court could affirm

---

[4] The Fifth Circuit denied relief in that case "with exceeding reluctance" because the issue was framed as a double jeopardy claim that was clearly foreclosed by precedent. **Vanderbilt v. Collins**, 994 F.2d at 196, 199.

7

a death sentence without making a finding about the validity of an aggravating factor.

The remedy for the violation of Mr. Garza's right to meaningful appellate review is to give him an opportunity to file a new direct appeal of the claim that the Fifth Circuit did not consider. The Supreme Court has remanded individual claims to state appellate courts to cure such a constitutional error. **Parker v. Dugger**, 498 U.S. at 323; **Clemons v. Mississippi**, 494 U.S. at 754 & n.5. This Court cannot literally remand a case to the Fifth Circuit, but it has the authority to fashion any remedy for a violation of a federal right that is required by law and justice.

> **II. MR. GARZA WAS DENIED DUE PROCESS OF LAW AT THE PUNISHMENT STAGE OF HIS CAPITAL TRIAL BECAUSE HE DID NOT HAVE A FAIR OPPORTUNITY TO DENY OR EXPLAIN THE GOVERNMENT'S QUESTIONABLE EVIDENCE OF HIS INVOLVEMENT IN FOUR EXTRANEOUS UNADJUDICATED MURDERS THAT WERE COMMITTED IN MEXICO, WHERE HE HAD NO RIGHT TO COMPULSORY PROCESS AND NO PROTECTION AGAINST THE SUPPRESSION, DESTRUCTION OR FABRICATION OF EVIDENCE BY THE POLICE.**

Mr. Garza's fifth amendment right to due process of law was violated at the punishment stage of his capital trial because he did not have a fair opportunity to deny or explain the government's questionable evidence of his involvement in the extraneous unadjudicated murders of four drug traffickers in Mexico. All of those homicides were unsolved by the Mexican police until the American government targeted Mr. Garza for the death penalty. Three of the killings were committed by other people when Mr. Garza was

not present. The government used the uncorroborated testimony of accomplices who made deals to prove that he was responsible for the crimes. One of the murder victims was severely tortured by the same Mexican police force that controlled the crime scenes, investigated the murders and provided evidence for our government to use in court. Mr. Garza could not effectively defend himself against these accusations without compulsory process in Mexico, discovery of exculpatory evidence that the Mexican police possessed and safeguards against police misconduct in that foreign country.

Mr. Garza's lawyers filed a written motion to suppress the four extraneous uncharged Mexican murders and a written demand for the disclosure of any **Brady** material about those crimes that the Mexican authorities possessed, including information about "other individuals" who were arrested or questioned in Mexico about their involvement in the offenses (R. 620, 674). Lead counsel asked the court to order the government to take affirmative action to obtain this exculpatory evidence from the Mexican authorities (June 30, pp. 21-22).[5] Counsel explained,

> They have a treaty in effect. The United States government and the Mexican government has a treaty and that is why he is entitled to receive certain information. He has a working relationship with the authorities down there. We don't have that relationship. I cannot waltz down to the Mexican Police Department in Matamoros or in Victoria or Vera Cruz and get it (June 30, p. 27).

---

[5] The pages of the pretrial hearing on June 30, 1993 are cited as (June 30, p.).

7

The court asked lead counsel to identify the specific records that he wanted from the Mexican authorities and explain why he needed the documents (June 30, p. 22). Lead counsel told the court that he heard "allegations that other individuals have been arrested" for the murders by "authorities in Mexico" and the prosecutor had not turned over "any reports linking other individuals with the Mexican murders" (June 30, pp. 22, 26). He asked the court again to order the government to obtain any records that the Mexican police compiled about the arrests of those suspects (June 30, p. 22).

The court only ordered the prosecutor to disclose "any information that is in any records regarding any Mexican investigation" that he knew about (June 30, p. 27). The prosecutor promised to comply with that order, but he added, "we do not know of anything that has not already been turned over" (June 30, p. 27).

The court refused to order the prosecutor to try to obtain records of the arrest or interrogation of other suspects from the Mexican authorities, unless Mr. Garza's lawyers identified the documents with greater specificity and explained why they could not get them (June 30, p. 27). Lead counsel told the court again that he could not obtain the records because he did not have subpoena power in Mexico (June 30, p. 27). He argued that the evidence of the four uncharged murders in Mexico should be suppressed because Mr. Garza could not obtain a fundamentally fair trial on those

10

charges without compulsory process in Mexico (June 30, p. 44). The court denied the motion to suppress that evidence (June 30, p 44).

The court's ruling violated the "'elemental due process requirement that a defendant not be sentenced to death 'on the basis of information which he had no opportunity to deny or explain.'" Skipper v. South Carolina, 476 U.S. 1, 5 n.1 (1986) (quoting Gardner v. Florida, 430 U.S. 349, 362 (1977)). Mr. Garza was free to cross-examine the government's witnesses about the murders in Mexico and introduce evidence to rebut their testimony if he could produce it, but the right to a fair hearing "embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them." Morgan v. United States, 304 U.S. 1, 18 (1938). Mr. Garza's opportunity to meet the government's aggravating evidence in the courtroom was meaningless because he could not "attempt independent verification of the information," Gardner v. Florida, 430 U.S. at 359, without subpoena power in Mexico and discovery of any exculpatory evidence that the Mexican authorities possessed.

The right of compulsory process "is in plain terms the right to present a defense." Washington v. Texas, 388 U.S. 14, 19 (1967). It guarantees that the government will use its full power to obtain the testimony of favorable witnesses and tangible evidence for a criminal defendant who does not have the resources to do so, United States v. Valenzuela-Bernal, 458 U.S. 858 (1982); Pennsylvania v. Ritchie, 480 U.S. 39, 55 (1987). Mr. Garza did not enjoy that right for all practical purposes because the court's subpoenas were

11

unenforceable in the foreign country where favorable witnesses and exculpatory evidence were most likely to be found. Technically speaking, there was no violation of his right to compulsory process, **United States v. Filippi**, 918 F.2d 244, 247 (1st Cir. 1990); **United States v. Haim**, 218 F. Supp. 922, 926 (S.D. N.Y. 1963), but our government had a duty under the due process clause to use its power to obtain exculpatory evidence that Mr. Garza could not subpoena from the Mexican government and disclose it to him. **See Velarde-Villarreal v. United States**, 354 F.2d 9, 13 (9th Cir. 1965) (due process clause violated because government did not try to produce an informant in a foreign country who could have provided exculpatory testimony); **United States v. Padilla**, 869 F.2d 372 (8th Cir. 1989) (holding that government has such a duty, but finding no error in defendant's case).

Mr. Garza did not have to make a more detailed offer of proof about the Mexican records of arrests and interrogations of suspects that he wanted to establish that the lack of compulsory process in Mexico was fundamentally unfair. A showing of materiality is required to establish that a defendant is entitled to subpoena a witness or a document, **Pennsylvania v. Ritchie**, 480 U.S. at 58 n.15, but there is "a relaxation of the specificity required in showing materiality" when the defendant did not have an opportunity to interview the witness, **United States v. Valenzuela-Bernal**, 458 U.S. 858, 870 n.8, 871 (1982), or see the document. **United States v. Burr**, 25 F.Cas. 187 (No. 14,694) (C.C.D.Va.1807) (opinion by Chief Justice John Marshall holding that Aaron Burr was entitled to

12

subpoena a letter that he had never seen without making an offer of proof about its contents). Requiring Mr. Garza to provide more details about the suspects who were arrested and interrogated by the Mexican police in order to obtain the records of their arrests and interrogations was as unfair as requiring a defendant to name a confidential government informant to show why the government should be required to disclose his identity. See Roviaro v. United States, 353 U.S. 53 (1957).

Mr. Garza would not have been caught in such a Catch-22 situation if the murders had been committed in this country because the government had a constitutional duty to disclose the identity of any other suspect who was questioned by the police, Kyles v. Whitley, 131 L. Ed. 2d 490, 511 (1995), or arrested for a crime that he was accused of. Banks v. Reynolds, 54 F.3d 1508 (10th Cir. 1995); Bowen v. Maynard, 799 F.2d 593 (10th Cir. 1986). Mr. Garza could have used that information to obtain a subpoena duces tecum for the records of the arrests and interrogations of suspects and an in camera inspection of the documents in this country. Pennsylvania v. Ritchie, 480 U.S. at 58 & n.15. The court would have disclosed any exculpatory evidence in the records to Mr. Garza, even if his offer of proof did not refer to it. Id. If the documents gave him the information that he needed to subpoena favorable witnesses, the government would have brought them to the courthouse and compelled them to testify even if it required an extensive search to find them. Johnson v. Walker, 199 F.Supp. 86,

13

95 (E.D. La.) aff'd, 317 F.2d (5th Cir. 1963); **United States v. Salzman**, 417 F.Supp. 1139, 1166 (E.D. N.Y. 1976).

Mr. Garza's inability to obtain evidence in Mexico that would have been available to him if the murders were committed in this country upset the "balance of forces between the accused and his accuser" that was necessary to provide a fundamentally fair trial. **See Wardius v. Oregon**, 412 U.S. 470, 474, 476 n.9 (1973). The government had "exclusive access to a storehouse of relevant fact," **Dennis v. United States**, 384 U.S. 855, 873 (1966), because the Mexican authorities were obligated by treaty and motivated by strong diplomatic and economic pressures to cooperate with the prosecution. Mr. Garza's English speaking court appointed attorneys could not be expected to use their limited time and resources when they were preparing to defend their client against an extremely complex capital murder conspiracy charge to find witnesses in Mexico who would voluntarily travel here to help an accused drug king pin and alleged multiple murderer fight the American and Mexican governments. "To decide otherwise, would simply be to ignore actualities." **Powell v. Alabama**, 287 U.S. 45, 58-59 (1932).

Mr. Garza's ability to deny or explain the government's evidence of the uncharged murders in Mexico was also crippled because the Mexican authorities who initially investigated the killings and controlled the physical evidence were not subject to any of the due process constraints that prevent wrongful convictions in this country. Our constitution does not allow the police to suppress exculpatory evidence, **United States v. Bagley**,

14

2

473 U.S. 667 1985, or destroy potentially exculpatory evidence in bad faith. **Arizona v. Youngblood**, 488 U.S. 51 (1988). The authorities cannot hide witnesses from the defendant, **Freeman v. State of Georgia**, 599 F.2d 65 (5th Cir. 1979), use threats to silence them, **United States v. Sutton**, 542 F.2d 1239, 1242 (5th Cir. 1976), or torture to influence their testimony. **Hysler v. Florida**, 315 U.S. 411 (1942). The court could have excluded evidence that the Mexican police gave to our government if Mr. Garza proved that they used investigatory methods that shock the American conscience to obtain it, **United States v. Heller**, 625 F.2d 594, 599 (5th Cir. 1980); **Birdsell v. United States**, 346 F.2d 775, 782 n.10 (5th Cir. 1965); **United States v. Fernandez-Caro**, 677 F.Supp., 893, 894-95 (S.D. Tex. 1989), but that minimal remedy was useless to him because he could not subpoena witnesses and evidence in Mexico to prove that such police misconduct occurred.

The absence of any safeguards against the suppression, destruction and fabrication of evidence by the Mexican police was incompatible with the heightened "need for reliability in the determination that death is the appropriate punishment in a specific case.'" **Gardner v. Florida**, 430 U.S. at 363 (White, J., concurring) (quoting **Woodson v. North Carolina**, 428 U.S. 280, 287 (1976)). The risk of a factually inaccurate death sentence is high in any case where evidence of an extraneous unadjudicated crime was admitted at the sentencing phase of a capital trial because the defendant's guilt or innocence of the uncharged offense was determined by a "jury that already ha[d] concluded unanimously that

the defendant is a first-degree murderer." **Williams v. Lynaugh**, 484 U.S. 935, 938 (1987) (Marshall and Brennan, JJ. dissenting from denial of cert.). The jurors probably could have rendered a constitutionally tolerable verdict in a trial for the Mexican murders if they were instructed not to consider Mr. Garza's conviction for three murders in this country, **Spencer v. Texas**, 385 U.S. 554, 562-63 (1966), but Mr. Garza did not even have the protection of a limiting instruction which "all practicing lawyers know to be unmitigated fiction." **Krulewitch v. United States**, 336 U.S. 440, 453 (1949) (concurring opinion by Justice Jackson). It would have required "a feat of psychological wizardry even for berobed judges" to give him a fair trial for the four Mexican murders under those circumstances. **United States v. Scoleri**, 310 F.2d 720, 725 (3d Cir. 1962). The idea that a jury could do so when he was also denied compulsory process, discovery of **Brady** material and all other safeguards against police misconduct in Mexico is preposterous.[6]

The jury's consideration of unreliable evidence of uncharged crimes in a capital sentencing proceeding cannot be compared to the

---

[6] The jury instruction that required the government to prove the uncharged Mexican murders beyond a reasonable doubt was not alone adequate to ensure that the factual predicate for Mr. Garza's death sentence was "determined with the high regard for truth that befits a decision affecting the life or death of a human being" because he was unable to obtain any evidence in Mexico that may have created such a doubt. **Ford v. Wainwright**, 477 U.S. 399, 411 (1987). Moreover, the jurors were likely to believe that he was "not entitled to the full benefit of the rules prescribed by law for the trial of human beings charged with crime involving the punishment of death" because they knew that he was convicted of three murders and other drug related crimes. **Boyd v. United States**, 142 U.S. 450, 458 (1892) (opinion by the first Justice Harlan).

16

constitutionally acceptable use of foreign convictions and the underlying facts of such offenses in a non-capital trial. A conviction for a crime in a foreign country cannot be used against a defendant at all if the rules of criminal procedure in that nation are fundamentally unfair by American standards. **United States v. Rodarte**, 596 F.2d 141, 146 (5th Cir. 1979); **United States v. Moskovits**, 784 F. Supp. 193 (E.D. Pa. 1992); **People v. Wallach**, 312 N.W.2d 387, 404 (Mich. 1981); **Riechman v. Florida**, 581 So.2d 133, 139 (Fla. 1991).[7] A federal sentencing judge can only use the underlying facts of a foreign conviction that would not pass constitutional muster in this country to enhance the defendant's sentence in a non-capital trial if he is aware of the constitutional infirmity and finds that the evidence is reliable in spite of it. **United States v. Azeem**, 946 F.2d 13, 17 (2d Cir. 1991); **United States v. Soliman**, 889 F.2d 441, 444 (2d Cir. 1989); **United States v. Fleishman**, 684 F.2d 1329, 1346 (9th Cir. 1982). Jurors are not trained to make that judgment and it is doubtful whether the constitution would permit a judge to do so in a capital sentencing trial. **See United States v. Scoleri**, 310 F.2d at 724 (due process forbids consideration of uncharged crimes in capital trial that would be admissible in a noncapital trial).

Mr. Garza's due process claim is cognizable on collateral review because the Fifth Circuit did not address the issue when he

---

[7] Twenty states have statutes that disallow the use of foreign convictions to enhance a sentence in a non-capital trial and only eight states have laws that expressly permit the introduction of such evidence. **State v. Williams**, 663 A.2d 1378, 1384 & nn. 4-5 (N.J. Superior Ct. 1995) (collecting statutes).

17

raised it on direct appeal. A federal district court may not review a claim in a § 2255 motion that was decided on the merits or procedurally defaulted on direct appeal without a showing of cause and actual prejudice, **Buckelew v. United States**, 575 F.2d 515 (5th Cir. 1978), but this rule of preclusion does not apply to claims that were preserved at trial, raised on appeal and ignored by the appellate court. **Kaufman v. United States**, 394 U.S. 217, 228 (1969); **Moore v. United States**, 598 F.2d 439, 441 (5th Cir. 1979); **Miller v. United States**, 1994 U.S. App. LEXIS 18162, *37, reported in table case format, 28 F.3d 1213 (6th Cir. 1994). In **Smith v. Digmon**, 434 U.S. 332 (1978), the Supreme Court held that it was "too obvious to merit extended discussion" that the availability of collateral review "cannot turn upon whether [an] appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in [a state prisoner's] brief." 434 U.S. at 333. Federal prisoners like Mr. Garza "are no less entitled to such consideration than state prisoners." **Kaufman v. United States**, 394 U.S. at 228; **see also Sanders v. United States**, 373 U.S. 1, 14 (1973) (same standard for reviewing a previously raised claim applies to a successive § 2254 petition and a § 2255 motion).

**Teague v. Lane**, 489 U.S. 288 (1989), does not bar collateral review of Mr. Garza's due process claim because he is not asking the Court to retroactively apply a new rule of law to his case. Mr. Garza is entitled to rely on any rule that was dictated by precedent when his conviction became final on December 2, 1996. **Penry v. Lynaugh**, 492 U.S. 302, 314 (1989)

18

on that date that the due process requirement of a fundamentally fair trial is violated when a capital defendant did not have a meaningful opportunity to deny or explain the evidentiary basis of his death sentence. **Skipper v. South Carolina**, 476 U.S. at 5 n.1. That rule "'is flexible and calls for such procedural protections as the particular situation demands'" to provide a fundamentally fair trial. **Gardner v. Florida**, 430 U.S. at 358 n.9 (citation omitted). "Fairness is a relative, not an absolute concept" and "[w]hat is fair in one set of circumstances may be an act of tyranny in others." **Snyder v. Massachusetts**, 291 U.S. 97, 116-117, (1934). "Where the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent." **Wright v. West**, 505 U.S. 277, 309 (1992)(Kennedy, J., concurring in judgment); **accord Turner v. Williams**, 35 F.3d 872, 884 (4th Cir. 1994).

The due process violation was not harmless because there is at least a grave doubt about whether it had a substantial and injurious effect on the jury's punishment verdict. **O'Neal v. McAninch**, 115 S. Ct. 992 (1995); **Brecht v. Abrahamson**, 113 S. Ct. 1710 (1993). The jury was instructed to weigh eleven specific non-statutory aggravating circumstances that were based on the four uncharged Mexican murders along with the statutory aggravating factors and the mitigating circumstances (R. 258-260). This placed eleven heavy thumbs on death's side of the scale. **Stringer v.**

19

7

**Black**, 112 S. Ct. 1130, 1137 (1992).  The jury may well have voted for a sentence less than death without those invalid aggravators because the jury found several specific significant mitigating factors[8] and stated in writing that others existed (R. 264-67).  The risk of actual prejudice was heightened by the fact that each juror had absolute discretion to veto the death penalty even if she believed that the aggravating circumstances outweighed the mitigating factors.

Mr. Garza is entitled to relief even if the error was harmless under the **Brecht v. Abrahamson** test because the **Chapman v. California**, 386 U.S. 18 (1966) test was not applied on direct appeal.  **Joubert v. Hopkins**, 75 F.3d 1232, 1245 (8th Cir. 1994); **Williams v. Clarke**, 40 F.3d 1529, 1541 (8th Cir. 1994); **Lyons v. Johnson**, 912 F.Supp. 679, 688-89 (S.D. N.Y. 1996).  The error cannot be harmless under **Chapman**, unless the government proves beyond a reasonable doubt that the invalid aggravating factors did not contribute to the verdict.  **Clemons v. Mississippi**, 494 U.S. 738 (1990).  It is impossible to be that sure that eleven unconstitutional thumbs on the death side of the scale did not tip the balance at all or contribute to a single juror's decision not to exercise her discretion to give thumbs down to capital punishment.

---

[8] Those mitigating factors were unusual and substantial duress, youthfulness, equally culpable accomplices who received sentences less than death and the consent of the victims to the criminal conduct that resulted in their murders.

III. MR. GARZA WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL BECAUSE THE FIFTH CIRCUIT CORRECTLY REFUSED TO CONSIDER A WINNING CHALLENGE TO AN UNCONSTITUTIONAL PERMISSIVE JURY INSTRUCTION ABOUT CONSIDERATION OF NON-STATUTORY MITIGATING CIRCUMSTANCES THAT HIS APPELLATE ATTORNEYS INADEQUATELY BRIEFED IN A CONCLUSORY FOOTNOTE.

Mr. Garza was denied effective assistance of counsel on direct appeal because his attorneys procedurally defaulted a winning claim by raising it in a conclusory footnote. The 141 page opening brief that Mr. Garza's appellate attorneys filed in this case was thorough, creative and brilliant in certain respects, but they forgot that a "brief that raises every colorable issue runs the risk of burying good arguments--those that, in the words of the great advocate John W. Davis, 'go for the jugular,' in a verbal mound made up of strong and weak contentions." **Jones v. Barnes**, 463 U.S. 745, 753 (1983) (citation omitted).

The test for ineffective assistance of appellate counsel has two parts: 1) did counsel's performance fall outside the wide range of professionally competent assistance; 2) is there a reasonable probability that but for counsel's mistake, the outcome of the appeal would have been different. **Smith v. Murray**. 477 U.S. 527, 536 (1986). Counsel's failure to raise or effectively present one very strong claim can be deficient performance under the first prong of that test, even if he effectively briefed other colorable points. **United States v. Cook**, 45 F.3d 388, 395 (10th Cir. 1995); **Maitre v. Wainwright**, 811 F.2d 1430, 1438 (11th Cir. 1987); **Gray v. Greer**, 778 F.2d 350, 352 (7th Cir. 1986). Counsel's failure to

21

adequately raise a claim that had a reasonable probability of making favorable new law can be prejudicial under the second prong. **Claudio v. Scully**, 982 F.2d 798, 803 (2d Cir. 1992).

Here, counsel tried to raise several points in a footnote of their brief, including a claim that the jury instructions and verdict form were "heavily weighted towards the death penalty" because the jury was told that consideration of non-statutory mitigating circumstances was permissible, but not mandatory (B. 49 n.41). Counsel did not cite any authority to support the point or attempt to explain why it was a reversible error. The Fifth Circuit correctly held that this "bald claim" of error in a "gargantuan footnote" that contained a "laundry list" of other complaints was not adequately briefed and refused to address it. **United States v. Flores and Garza**, 63 F.3d at 1374 n. 36.

Counsel's failure to properly brief this issue denied Mr. Garza effective assistance of counsel, notwithstanding the fact that they presented other strong but unsuccessful claims. **United States v. Cook**, 45 F.3d at 395. The deficient performance prong of that test for ineffective assistance was clearly satisfied because it is always unreasonable for counsel not to comply with a procedural rule for perfecting a claim. **Evitts v. Lucy**, 469 U.S. 387 (1985); **Ex parte Dietzman**, 790 S.W.2d 305 (Tex.Cr.App. 1990). Counsel's conclusory statement of the claim without any argument or authority to support it would have been unreasonable even if it was sufficient to preserve the issue. **High v. Rhay**, 519 F.2d, 109, 112 (9th Cir. 1975); **Dunn v. Cook**, 791 P.2d 873 (Utah 1990). "No

22

100

client in his right mind would pay one cent for such a performance." **High v. Rhay**, 519 F.2d at 112.

Mr. Garza was prejudiced by counsel's unreasonable failure to properly brief the permissive mitigation instruction claim because it had "a reasonable probability of success" on appeal. **Claudio v. Scully**, 982 F.2d at 803. There was no controlling case that was precisely on point, but Mr. Garza only has to show that this "significant and obvious issue...may have resulted in a reversal." **Gray v. Greer**, 778 F.2d at 353.

The jury was instructed on the verdict form that "any member of the jury who finds the existence of a mitigating factor **may** consider such factor established in considering whether or not a sentence of death shall be imposed" (R. 262). The jury was orally instructed that "the law of the United States provides a list of some mitigating factors that you as jurors **must** consider" and then told four times that consideration of non-statutory mitigating evidence was discretionary:

> However, this list is not to be viewed as a complete list of the mitigating factors you **may** consider. Indeed each of you **may** consider any factor you, as an individual, find has been established by a preponderance of the evidence that relates to any aspect of the defendant's character or background, any circumstance of the offense or any other fact or circumstance which you, as an individual conclude indicates or tends to indicate that the defendant should not be sentenced to death...Number 10 says that you **may** consider other factors in the background or character which mitigate against the imposition of the death sentence...Any member who finds by a preponderance of the evidence the existence of a mitigating factor **may** consider such factor established for his or her weighing of

23

aggravating and mitigating factors (3578-79) (emphasis added).

The jury was also instructed that "you must weigh any aggravating factors that you unanimously found to exist...against any mitigating factors that any of you found to exist," but the court did not reconcile that mandatory language with the earlier permissive instructions about consideration of non-statutory mitigating factors (R. 268; 3580).

These written and oral instructions violated the eighth amendment rule that "the jury instructions -- taken as a whole -- must clearly inform the jury that they **are** to consider any relevant mitigating evidence." **California v. Brown**, 479 U.S. 538, 545 (1987) (O'Connor J., concurring) (emphasis added); **accord Cochran v. State**, 500 So.2d 1161, 1174 (Ala.Cr.App. 1984) (eighth amendment requires the court to "instruct the jury that it **must** consider mitigating evidence") (emphasis added). This rule applies to non-statutory mitigating factors as well as statutory circumstances. **Hitchcock v. Dugger**, 481 U.S. 393, 394 (1987).

An instruction that merely permits the jury to consider relevant non-statutory mitigating evidence provides constitutionally inadequate guidance about the standard for determining the appropriate punishment and implicitly authorizes what the eighth amendment forbids. **Watkins v. Virginia**, 493 U.S. 907 (1989) (Marshall, J., dissenting from denial of cert.). It is well settled that "'sentencer may not refuse to consider **or** be precluded from considering any relevant [non-statutory] mitigating evidence.'" **Hitchcock v. Dugger**, 481 U.S. at 394 (quoting **Skipper**

24

**v. South Carolina**, 476 U.S. 1, 4 (1986)) (emphasis added). Jurors who deem such "mitigating evidence to be irrelevant to their decision to impose the death penalty" will certainly disregard it if they are given that choice. **Morgan v. Illinois**, 112 S. Ct. 2222, 2233 (1991). The jury must therefore "receive clear instructions which not only do not preclude consideration of mitigating factors, but which also 'guide and focus the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender.'" **Spivey v. Zant**, 661 F.2d 464, 471 (5th Cir. 1981) (citations omitted); **accord Smith v. Black**, 887 F.2d 513, 520 (5th Cir. 1989) (citing **Franklin v. Lynaugh**, 487 U.S. 164 (1988)).

An average juror would have understood that the instruction which permitted consideration of non-statutory mitigating evidence gave him permission to ignore it. **Watkins v. Virginia**, 493 U.S. at 907 (Marshall, J., dissenting from denial of cert.). This unconstitutional message was underscored by the close juxtaposition of that permissive language with the part of the charge that mandated consideration of statutory mitigating factors. Any reasonable juror who compared these instructions had to conclude that there were separate mandatory and discretionary legal standards for considering two distinctive classes of mitigating evidence.

The final part of the charge that required consideration of any mitigating factors did not cure the permissive language that was consistently used in the instructions about non-statutory

25

mitigators. The jury was at best clearly instructed by the court that it could sentence Mr. Garza to death on an impermissible legal theory, as well as on a proper theory. "Although it is possible that the [death] verdict may have had a proper basis, it is equally likely that the verdict rested on an unconstitutional ground" and the Supreme Court has "declined to choose between two such likely possibilities." **Boyde v. California**, 494 U.S. 370, 380 (1990).

There is at least a reasonable probability that the permissive instructions about non-statutory mitigating factors in this case would not have been held harmless beyond a reasonable doubt if counsel had adequately briefed the claim. The aggravating factors were strong, but an "appellate court cannot deem error to be automatically harmless based solely on the aggravated character of a murder without assessing the impact of the error on the sentencer's discretion" to consider mitigating evidence. **Payne v. Tennessee**, 111 S. Ct. 2597, 2624 (1991) (Marshall and Blackmun, JJ., dissenting). This is especially true here because each juror had absolute discretion to veto the death penalty even if she believed that the aggravating factors outweighed the mitigating circumstances. The fact that Mr. Garza murdered several people did not establish beyond a reasonable doubt that the non-statutory mitigating circumstances would not have persuaded a juror to exercise that discretion. **Parker v. Dugger**, 498 U.S. 308, 319-20 (1991).

There were 18 non-statutory mitigating circumstances listed on the verdict form with a permissive instruction that allowed the

26

jury to ignore them. Those factors included mental or emotional disturbance caused by an unstable family upbringing, harsh and impoverished living conditions during childhood, taking care of an invalid mother and Mr. Garza's caring relationship with his two young children (R. 264-67). The jurors could have found that all 18 factors existed because they stated in writing that Mr. Garza proved the existence of non-statutory mitigators without specifying what they were (R. 267). Mr. Garza was prejudiced "if even a single juror adhered to the view that such a factor should not be so considered" because each juror had the power to find that it was an independent basis for a sentence less than death. **Mills v. Maryland**, 486 U.S. 367, 380 (1988).

The risk of prejudice was heightened by the fact that the non-statutory mitigating circumstances should have been weighed with four significant statutory mitigating factors that the jury found: substantial duress, youthfulness, the involvement of the victims in the crimes that resulted in their deaths and the prison sentences of equally culpable parties to the capital offense (R. 262-64). In **Washington v. Watkins**, 655 F.2d 1346 (5th Cir. Unit A. 1981), the Fifth Circuit held that "the jury might rationally have concluded that the two statutory mitigating circumstances" including "Washington's relative youth" and non-statutory mitigating factors such as his role as a father might have together outweighed the aggravating factors. 655 F.2d at 1375. It may not have required a great deal of additional weight on the mitigation side of a juror's scale to tip the balance against death in this case because Mr.

27

5

Garza's statutory and non-statutory mitigating evidence was stronger. A finding of harmless error was exceedingly unlikely under those circumstances because the eighth amendment guarantees, "as much as is humanly possible, that the sentence was not imposed" by a juror who mistakenly believed that she did not have a duty to consider mitigating evidence. **Eddings v. Oklahoma**, 455 U.S. 104, 117 (1981).

The Court should hold this case in abeyance until the Supreme Court delivers its decision in **Buchanan v. Angelone**, 117 S. Ct. 1151 (1997), <u>cert. granted to review</u>, **Buchanan v. Agnelone**, 103 F.3d 344, 347 (4th Cir. 1996), if it is not fully convinced that an adequately briefed challenge to the permissive jury instruction about non-statutory mitigating circumstances had a reasonable probability of success. The jury in that case received instructions that permitted consideration of mitigating circumstances and the question presented is whether the eighth amendment required more guidance. If relief is granted in that habeas case, it will almost certainly establish that precedent would have dictated a reversal for the permissive jury instruction about mitigating non-statutory mitigating evidence that counsel failed to adequately brief in this case. It would be terribly unfair to allow Mr. Garza to be executed before the Supreme Court has a chance to resolve the issue.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons stated above, the Court should grant the motion to set aside and vacate Mr. Garza's death sentence and:

a) order a new punishment trial;

b) order a new direct appeal;

c) order a limited new direct appeal of the due process claim that the Fifth Circuit did not consider;

d) order the government not to set an execution date until the Court's mandate on this motion is released.

Respectfully submitted,

_____
STEVEN C. LOSCH
Attorney for Defendant

29

## VERIFICATION

I swear under penalty of perjury that all of the statements of fact in this motion are true.


_____
STEVEN C. LOSCH
Attorney for Defendant-Movant
906 Delia Drive
Longview, Texas 75601
903-234-1373


Sworn before me on this the $\underline{13}$ day of November, 1997.


_____
NOTARY PUBLIC

KAYE WRIGHT
Notary Public, State of Texas
My Commission Expires
September 12, 1999

30

## CERTIFICATE OF SERVICE

A copy of the foregoing motion was shipped by first class U.S. mail to counsel for respondent, Assistant U.S. attorney, Mark Patterson, P.O. Box 1671, Brownsville, Tx. 78521, on this the 28th day of November, 1997.

STEVEN C. LOSCH
Attorney for Appellant
906 Delia Drive
Longview, Texas 75601
903-234-1373

31