#5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 29 1998

Michael N. Milby, Clerk of Court

UNITED STATES OF AMERICA, §
§
§
Plaintiff-Respondent, §
§
§ DOCKET NO. B-97-273
vs. §
§
§
§
JUAN RAUL GARZA, §
§
Defendant-Movant, §
§
§
§
§
§

## MOVANT'S RULE 59(e) MOTION
## TO ALTER OR AMEND JUDGMENT

Movant JUAN RAUL GARZA, pursuant to Rule 59(e) of the Federal Rules

of Civil Procedure, respectfully requests that this Court alter or amend its judgment

of April 9, 1998 denying relief under 28 U.S.C. § 2255.

I.   **This Court's entry of a one-page order denying relief on the same
     day that the Government's Answer was filed was an
     unprecedented and inappropriate way to conduct proceedings in a
     § 2255 proceeding, especially one which involves complex factual
     and legal challenges to a death sentence.**

This Court entered a one-page order devoid of findings of fact and

1

conclusions of law denying the Movant § 2255 relief on the *very same day* the United States filed its Answer to his Motion. *See* Exhibit 1 (docket sheet). This procedure violated due process protections applicable to federal postconviction proceedings, which require that habeas petitioners and § 2255 movants must, before entry of judgment, be given notice and a reasonable opportunity to respond to arguments in the Government's responsive pleadings.

In *Norman v. McCotter*, 765 F.2d 504, 506 (5th Cir. 1985), Norman filed an initial petition for habeas corpus relief pursuant to 28 U.S.C. § 2254.[1] The State filed a Motion to Dismiss. *Id.* The district court, without giving Norman notice or an opportunity to respond to the State's briefing, treated the State's Motion as a Motion for Summary Judgment and granted it. *Id.* On appeal, the State contended that the absence in Rule 8(a) of the Rules Governing § 2254 Proceedings of any notice or opportunity-to-respond requirement authorized the judge's actions. *Id.* at 507. The Fifth Circuit disagreed. The court first held that FED. R. CIV. P. 56(c), which requires that non-movants be given notice and ten days to respond to motions

---

[1] While habeas corpus petitions attacking State judgments and federal § 2255 motions differ in substance, the due process requirements in each context are identical. *See, e.g., United States v. Cullum*, 47 F.3d 763, 764 n.2 (5th Cir. 1995) ("[T]he same rules should govern abuse of both remedies."); *id.* at 765 (citing § 2254 cases in order to illustrate district court's error in refusing to afford § 2255 movant adequate notice and opportunity to respond); *United States v. Flores*, 981 F.2d 231, 234 (5th Cir. 1993).

2

for summary judgment, governs habeas actions. *Id.* It also noted that it had consistently held that requirements similar to Rule 56's applied in the postconviction context, even when the State alleged that the petitioner was abusing the writ of habeas corpus. *Id.* at 507-08 (citing *Jones v. Estelle*, 692 F.2d 380 (5th Cir.1982) and *McDonnell v. Estelle*, 666 F.2d 246 (5th Cir.1982)).

Proceedings under 28 U.S.C. § 2255 are governed by the same rules. *United States v. Cullum*, 47 F.3d 763, 764 (5th Cir. 1995). Adequate process must involve, at a minimum, providing the movant with notice and an opportunity to be heard before dismissing a successive § 2255 motion. *Id.* Because the Government may raise affirmative procedural defenses for the first time in its Answer to a § 2255 motion (as it did here) it is only fair to give the movant an opportunity to address these new aspects of the case before denying him relief. In *Cullum*, for example, the Movant filed a successive § 2255 motion, and the Government urged the court to dismiss the motion under Rule 9(b) of the Rules Governing § 2255 Proceedings, which provide for the dismissal of successive motions. As the Fifth Circuit noted, once the Government invokes the successor bar of Rule 9(b), the Movant bears the burden of proving that his Motion qualifies for an exception to the bar. *Id.* In *Cullum*, the district court dismissed Cullum's motion without providing him notice of its intent to rule or an opportunity to dispute the Government's procedural

3

arguments. *Id.* Thus, he was never given an opportunity to bear the burden which the law imposed on him. The Fifth Circuit found that the district court had abused its discretion, and remanded Cullum's motion. *Id.*; *see Bates v. Whitey*, 19 F.3d 1066, 1067 (5th Cir. 1994) (remanding for determination of whether habeas petition should be dismissed as successive and cautioning that "Bates should be given specific notice that the district court is considering the dismissal of his petition under Rule 9(b) and at least ten days in which to respond"); *Johnson v. Puckett*, 978 F.2d 855, 858 (1988); *Urdy v. McCotter*, 773 F.2d 652, 656 (5th Cir. 1985). Civil practice governing motions to dismiss or motions for summary judgment, to which the Government's Answer can be compared, likewise mandates that the non-moving party be given notice and an opportunity to respond to the arguments in the motion before it is granted. *See, e.g., Millar v. Houghton*, 115 F.3d 348, 350 (5th Cir. 1997) ("Under FED. R. CIV. P. 56(c), a party must be served with a motion for summary judgment at least 10 days before a court grants the motion against him. Similarly, a party must be given at least 10 days notice before a court grants summary judgment *sua sponte*."); *Fernandez-Montez v. Allied Pilots Ass'n*, 987 F.2d 278, 283-84 (5th Cir. 1993).

This Court's decision to surprise Mr. Garza with an unexplained ruling entered the very day the Government answered deprived him of his only opportunity

to dispute the Government's irrelevant procedural defense arguments and its inaccurate characterization of his claims. Ironically, even though this is Mr. Garza's first § 2255 Motion, he has received far less process than is due a prisoner who presumptively abuses the process by filing a *subsequent* § 2255 motion. *See Cullum, supra.* Here, Mr. Garza: (1) has not abused the § 2255 process; (2) has presented this Court with substantial constitutional questions; (3) is contesting a death sentence -- a kind of judgment which merits the most exacting appellate scrutiny -- and (4) disputes the interpretation of a new, complex statute whose meaning is still in flux. In spite of all these factors, Mr. Garza was denied any notice, and any time -- even *one day* -- in which to prepare briefings disputing the Government's claims. It is true that in *Dillard v. Blackburn*, 780 F.2d 509, 515 (5th Cir. 1986), the Fifth Circuit held that "ten day notice provided for in FED. R. CIV. P. 56(c) is not required in habeas cases where the petitioner never claims the benefit of notice, never claims to have been disadvantaged by the lack of notice, and where the court is satisfied that he has not been so disadvantaged." In *Dillard*, the petitioner did not "at any time claim[] that his rights were violated by a lack of notice of dismissal." *Id.* Mr. Garza in this Motion is obviously raising just such a complaint. In fact, as his Rule 60(b) motion establishes, Mr. Garza was in the process of attempting to notify this Court of his intention to reply to the Government's Answer

5

when he was given the surprising news that the Court had already ruled that same day. This Court's precipitous action thus deprived him of the right to even *request* notice before the Court ruled.

Although the Supreme Court has cautiously accepted summary procedures for the disposition of death penalty habeas actions, it has done so in vastly different contexts and has mandated procedural safeguards this Court ignored. In *Barefoot v. Estelle*, 463 U.S. 880 (1983), the Supreme Court ruled that the Fifth Circuit acted appropriately in adopting a truncated briefing schedule to resolve an appeal from the district court's denial of a § 2254 petition. *Id.* at 889. However, in that case, the summary proceedings were rendered necessary by one factor and one factor only -- the presence of the state's impending execution date. The desire of the State to carry out its lawfully-imposed sentence of death weighted heavily on the *Barefoot* Court. *Id.* at 886-87. Here, of course, there is no pending execution date, and the proceedings thus far have not been marked by any significant delay, especially in view of the nature of the case.

In any event, this Court's procedures fell far short even of the summary practices authorized by the Supreme Court in *Barefoot*. That Court stressed that "federal courts . . . need not, and should not, . . . fail to give non-frivolous claims of constitutional error [in capital cases] the careful attention that they deserve." *Id.* at

887. Further, even if summary procedures are adopted, a federal petitioner "must be informed by rule or otherwise, that his opportunity [for argument on the merits] will be limited," *id.* at 889 (citing *Garrison v. Patterson*, 391 U.S. 464, 466-67 (1968) (per curiam)) and that "there must be ample evidence that in disposing of the appeal, the merits have been addressed [by the federal court]." *Id.* Mr. Garza submits that none of these conditions has been met in this case. The manner in which this Court conducted this § 2255 proceeding deprived Mr. Garza of the essential due process requirements of notice and an opportunity to be heard. Insofar as this Court's order "adopted" any of the Government's arguments, it also resulted in a judgment riddled with errors. It is especially unfair that the Movant, who is challenging a *death sentence*, should be afforded less process than one who challenges a mere prison sentence.

**II.    This Court's failure to provide the findings of fact and conclusions of law which are "plainly indispensable to appellate review" violates § 2255's procedures; deprives the Movant of meaningful appellate review; and constitutes an abuse of discretion.**

28 U.S.C. § 2255 provides:

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and *make findings of fact and conclusions of law with respect thereto.*

5

*Id* (emphasis added).  This Court could conceivably have disposed of Mr. Garza's §

2255 motion summarily, without even requesting the Government to file an answer,

upon a finding that the "files and records of the case conclusively show that the

prisoner is entitled to no relief."  This the Court did not do, and once proceedings

reached the stage in which the Government filed an Answer, the Court was required

to enter findings of fact and conclusions of law definitively resolving the case.

Higher federal courts have repeatedly admonished district courts to enter

findings of fact and conclusions of law adequately justifying their conclusions: "The

essence of unexplained orders is that they say nothing." *Ylst v. Nunnemaker*, 501

U.S. 797, 804 (1991); *Kelley v. Everglades Drainage Dist.*, 319 U.S. 415, 421

(1943) ("[T]here must be findings, stated either in the court's opinion or separately,

which are sufficient to indicate the factual basis for the ultimate conclusion."); *White

v. Texas Am. Bank/Galleria*, 958 F.2d 80, 82 (5th Cir. 1992) ("Although we review

grants of summary judgment de novo, we remain a court of error.  Without adequate

findings of fact and conclusions of law, we are severely hampered if not completely

obstructed in our review.").

As the text of § 2255 indicates, adequate findings are required in § 2255

cases as well.  One panel of the Fifth Circuit has explained that "the preferred

practice in dismissing a section 2255 motion in accordance with Rule 4(b)[2] is to enumerate the issues raised by the movant, specify that each is being summarily dismissed in accordance with the rule, and explain the legal grounds for that action." *United States v. Counts*, 691 F. 2d 348, 349 (5th Cir. 1982). The court advised that this practice "provides a solid basis for appellate review" and "removes any ambiguity from the notice of dismissal." *Id.* In *United States v. Hart*, 565 F.2d 360 362 (5th Cir. 1977), the Fifth Circuit again stressed the need for adequate findings of fact and conclusions of law:

> While the new rules to § 2255 do not require findings of fact and conclusions of law, such are plainly *indispensable* to appellate review. Prior to the effective date of the new rules, this Court had required the district court to states eparately its findings of facts and conclusions of law in § 2255 cases, and this practice is not inconsistent with the new § 2255 rules.

*Id.* (emphasis added). The Fifth Circuit has opined that the failure to enter findings of fact and conclusions of law in § 2255 cases makes "effective appellate review . . . impossible." *United States v. Edwards*, 711 F.2d 633, 634 (5th Cir. 1983). Once

---

[2] This Court's cryptic one-sentence order does not reveal the legal basis for its denial of relief. Conceivably, this Court dismissed the petition under Rule 4 of the Rules Governing § 2255 Proceedings on the grounds that "it plainly appears" that "the petitioner is not entitled to relief in the district court." However, since such dismissals usually come before the United States files an answer, it seems unlikely that this Rule provided the basis for dismissal. On the other hand, this Court may have denied relief under a summary-judgment standard appropriate to § 2255 proceedings. Because the precise reason for the dismissal is not revealed by the Court's order, the Movant will address the standards and expectations governing all dismissals of § 2255 actions.

the proceedings go past the summary-dismissal stage (i.e. once the Government has answered), the district court becomes obliged to enter findings of fact. *United States v. Shaid*, 916 F.2d 984, 988 (5th Cir. 1990) ("[U]nless the record shows conclusively that the petitioner is not entitled to relief, the district court *must* state findings of facts and conclusions of law for its ruling on a § 2255 motion."), *on reh'g on other grounds*, 937 F.2d 228, *cert. denied*, 502 U.S. 1076 (1991); *United States v. Daly*, 823 F.2d 871, 872 (5th Cir.1987) ("This Court consistently *requires* district courts to state findings and conclusions for their rulings on motions to vacate sentence filed under 28 U.S.C. § 2255.") (emphases added).

This Court's refusal to specify the bases for its decisions will make appellate review of this § 2255 motion virtually impossible, and will likely result in a wasteful, unnecessary remand to this Court so that it may enter findings and conclusions. An analysis of one of the claims in the motion will demonstrate the difficulties of interpreting this Court's decision. Mr. Garza claimed that he was denied due process of law when the United States proffered during the punishment phase evidence of his involvement in uncharged homicides which occurred in Mexico. *See* Motion at 8-20. The Government in its Answer, proposed at least 5 separate bases for denying this claim: (1) the Government provided full discovery related to the offenses, neutralizing any constitutional violation (Answer at 18); (2)

10

Mr. Garza failed to identify with adequate specificity the documents or witnesses known to the government which would have helped him with his case (*Id.* at 19-20); (3) Mr. Garza could have obtained access to the relevant information through the exercise of due diligence (*Id.* at 21-22); (4) Mr. Garza's claim actually requests extra-territorial subpoena power, a power the Fifth Circuit does not recognize (*Id.* at 22); and/or (5) Mr. Garza's claim would constitute a new rule of criminal procedure, and is thus barred by the non-retroactivity doctrine of *Teague v. Lane*, 489 U.S. 288 (1989).[3]

This Court's one-page order does not identify whether the Court found any or all of the Government's arguments persuasive. Indeed, because it does not

---

[3] Although the United States did not invoke *Teague* by name, its citation to *Gray v. Netherland*, 116 S. Ct. 2074 (1997), admits of no other interpretation. The Government characterized Mr. Garza's claim that he was entitled to further resources to "deny or explain" the Mexican-murder evidence as similar to Gray's claim that he was unfairly ambushed by evidence the State proffered at the punishment phase of his State death penalty trial. *See* Answer at 23; *Gray*, 116 S. Ct. at 2083. The Supreme Court did *not* reject Gray's notice-of-evidence claim on the merits -- it merely held that the rule Gray sought would represent a modification or extension of criminal procedural rules in effect at the time Gray's conviction became final, and thus was not permitted by *Teague*. *Id.* at 2084. The Government cannot have cited *Gray* to demonstrate that Mr. Garza's claim was meritless, because *Gray* does not decide that issue. Retroactivity is a "threshold" determination, and thus a finding that a rule may not be applied retroactively pre-empts any discussion of its merits. *Lambrix v. Singletary*, 117 S. Ct. 1517, 1523 (1997). The discreteness of the merits and retroactivity inquiries is demonstrated by cases in which the Supreme Court has granted relief on a constitutional argument in one case, but later held that same argument to be a new rule. *Compare, e.g., Simmons v. South Carolina*, 512 U.S. 154 (1994) (recognizing defendant's right to inform jury that he would be sentenced to life without parole if the jury spared him the death penalty) *with O'Dell v. Netherland*, 117 S. Ct. 1969 (1997) (holding *Simmons* to be a new rule).

11

specifically adopt any of the Government's reasoning, the Court's order leaves open the possibility that the Court was unpersuaded by *any* of the Government's arguments, and instead rendered its decision on some other unstated ground. Appellate review of this Court's decision will be impossible. The Fifth Circuit will be unable even to determine whether this Court's judgment was based on the merits or on a finding of procedural default or lack of jurisdiction.[4]

### III. This Court's judgment violated the Antiterrorism and Effective Death Penalty Act of 1996 in that it failed to make the requisite finding of whether the Movant is entitled to a Certificate of Appealability.

"The Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), Pub.L. 104-132, 110 Stat. 1214, amended 28 U.S.C. § 2253 to require a certificate of appealability ('COA') before an appeal may proceed in a § 2255 or a § 2254 action." *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.), *cert. denied*,

---

[4] This confusion will arise in relation to Mr. Garza's claim that the Fifth Circuit deprived him of meaningful appellate review when it failed to resolve one of his challenges to the Mexican murder evidence on direct review. The Government first contended that the Fifth Circuit had indeed resolved the issue, meaning that Mr. Garza was not entitled to raise it again. Answer at 6; *see United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997) (claims raised and denied on direct appeal are "procedurally barred from collateral review."); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir.) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."), *cert. denied*, 476 U.S. 1118 (1986). In any event, the Government argued, Mr. Garza's rights were not violated at trial, and thus any failure of the Fifth Circuit to address the claim was harmless. Answer at 18-23. This Court's Order does not reveal whether it chose the procedural or substantive argument to deny Mr. Garza relief.

*Johnson v. Monroe*, 118 S. Ct. 576 (1997) . A § 2255 movant is entitled to a certificate of appealability by "making a substantial showing of the denial of a constitutional right." *United States v. Youngblood*, 116 F.3d 1113, 1114 (5th Cir. 1997). District courts have the jurisdiction to determine whether § 2255 movants are entitled to COAs, and in fact must do so, because the Fifth Circuit does not possess jurisdiction to hear an appeal of a claim in a § 2255 motion unless the district court has determined that it is merits a COA. *Id.*[5] A COA must be granted or denied as to each specific claim in the proceeding. *Fuller v. Johnson*, 114 F.2d 491, 495 (5th Cir. 1997).

A movant need not establish that he will win on the merits in order to obtain a COA on a specific claim. *United States v. Rocha*, 109 F.3d 225, 227 n.2 (5th Cir. 1997) ("Certainly, we recognize that the showing for obtaining a COA is lower than that required to prevail on the merits."). He need only demonstrate that the questions he raises are "debatable among jurists of reason, and [that] he has made an adequate showing to proceed further." *Id.* A district court should "resolve doubts about whether to grant a COA in favor of the petitioner . . .and . . . may properly consider the severity of the penalty in making this determination." *Id.*

---

[5] The Fifth Circuit does have jurisdiction to review a district court's denial of a COA. *United States v. Gobert*, ___ F.3d ___, 1998 WL 180650, at *10 (5th Cir. Apr. 16, 1998).

(citing *Buxton v. Collins*, 925 F.2d 816, 819 (5th Cir.), *cert. denied*, 498 U.S. 1128 (1991), and *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Obviously, this Court did not make any such determination, and now considers this case closed. *See* Exhibit 1.  Because no COA determination has been made, the Fifth Circuit will be required to remand this cause to this Court for such purposes.  *Youngblood*, 116 F.3d at 1115 (remanding case to district court "for the limited purpose of considering whether COA should issue in accordance with FED. R. APP. P. 22(b) and § 2253(c)(3)").  In order to avoid such a wasteful remand, this Court should decide the COA issue, and should grant COA as to each of Mr. Garza's three claims of error, because he has clearly demonstrated that the issues are "debatable among jurists of reason."

**IV.   Insofar as this Court's one-page order accepted the Government's characterization of Movant's claim that he was denied meaningful appellate review of his death sentence, it is erroneous.**

Mr. Garza complained in his § 2255 Motion that the Fifth Circuit deprived him of "meaningful appellate review" by failing to consider several of his challenges to the evidence of the Mexican homicides introduced against him as aggravating evidence during the punishment phase of his trial.  Motion at 3-4.  The Government contended in its Answer that "[e]ach of these claims was addressed by the Fifth Circuit."  Answer at 6.  The record does not support the Government's assertion.

14

The points of error relevant to the uncharged foreign homicides which the Fifth Circuit reviewed related to (1) the Government's belated notice to Mr. Garza that it would rely on the Mexican homicides during the punishment phase of his trial (rejected at *Flores and Garza v. United States*, 63 F.3d 1342, 1363-64 (5th Cir. 1995)); (2) the Government's provision of an unrealistically lengthy witness list, its failure to specify the witnesses' addresses, and is failure to designate which witnesses were confidential informants (rejected at *id.* at 1364); (3) the Government's failure to turn over *Brady* and Jencks Act material (rejected at *id.* at 1365); (4) the Government's failure to disclose some statements by the Defendant which it introduced at trial (rejected at *id.* at 1365); and (5) the trial court's decision to allow the Government to object during Mr. Garza's closing argument (rejected at *id.* at 1365). On page 1366, the *Flores and Garza* opinion moves on to discuss the sentencing procedure in Mr. Garza's case, and addresses a *Simmons*-based challenge and the use of future-dangerousness arguments. *Id.* at 1366-69. Finally, the court addresses Mr. Garza's broad challenges to the constitutionality of the federal death sentencing scheme. *Id.* at 1369- 1371.

Thus, the Fifth Circuit simply never addressed at least three of the arguments advanced by Mr. Garza: (1) that the district court lacked subject-matter jurisdiction over the foreign homicides (Brief at 95-96); (2) that Mr. Garza's ability to present a

defense to the foreign-homicide evidence was crippled by his inability to subpoena witnesses in Mexico (*Id.* at 96); and (3) that this evidence was "unduly prejudicial" and unreliable even given the relaxed evidentiary standards that apply to federal death penalty cases. *Id.* at 95, 96-97. Mr. Garza summed up his objections to the foreign-homicide evidence on page 97 of his Brief, described the actions he contends the court should have taken to ensure due process, and specifically asserted that the consideration of these homicides deprived him of his right to due process of law under the Fifth Amendment to the United States Constitution.

The Government contends that the Fifth Circuit actually addressed these claims, but points only to phrases taken out of context from discussions of other points of error. Answer at 6 (contending that Fifth Circuit considered "insufficient notice" claim in "discovery" context). The Government does not contend that the Fifth Circuit did what appellate courts normally do in reviewing points of error (and which the Fifth Circuit itself did in reviewing the other points of error raised): accurately summarize the substance of the claimed error, note the relevant authorities and standards of review, and apply the law to the facts.

The Government's contention that the Fifth Circuit implicitly reviewed these claims when it determined whether "the information supports the special finding of the existence of every aggravating factor" (pursuant to 21 U.S.C. § 848 (q)(3)(B))

16

does not persuade. *See* Answer at 7. It is one thing to determine whether there was sufficient evidence to support the jury's findings as to the Mexican murders, but quite another to determine whether the evidence itself was unduly prejudicial, whether the district court had subject-matter jurisdiction over it, or whether the defense was unconstitutionally crippled in its ability to present a defense to it.

Finally, the Government contends that Mr. Garza asks this Court to "assess the adequacy of a higher court's review," and argues (without citation) that this is impermissible. Answer at 7-8. First, Mr. Garza is not asking this Court to comment on the quality of the Fifth Circuit's decision; he is merely asking the Court to recognize that the Fifth Circuit failed to address certain points. Second, district courts routinely perform this review in § 2255 cases, because they are not permitted to consider points of error raised in § 2255 motions which were raised and rejected on direct review. *See* fn. 4, *supra*. This determination often requires the district court to carefully parse the previous Fifth Circuit decision. *See, e.g., United States v. Towe*, 26 F.3d 614, 616 (5th Cir. 1994); *United States v. Drobny*, 955 F.2d 990, 995 (5th Cir. 1992).

## V. Insofar as this Court's judgment adopts the Government's characterization of Mr. Garza's *Gardner* claim, it is incorrect.

During the punishment phase of Mr. Garza's trial, the Government linked him

to four murders which had allegedly happened in Mexico. The only evidence positively linking Mr. Garza to these offenses was the testimony of accomplice witnesses. These witnesses had received deals for their testimony, often deals which exempted them from prosecution for a potentially death-eligible crime. At trial and on direct appeal, Mr. Garza proposed several alternate methods of minimizing the risk that this questionable accomplice-witness testimony would reduce the reliability of the jury's sentencing decision: allowing pretrial interviews of critical Government witnesses; requiring the Government to provide a "reliable" witness list; giving Mr. Garza additional preparation time and investigative assistance (Brief at 97); asking the Government to provide the names of suspects who were arrested for the murders; and/or requiring the Government to invoke its treaty right to cooperation from Mexican law enforcement authorities in order to provide more information about the murders to facilitate defense investigation. *See* Motion at 10-11. As a last resort, if this Court was unwilling to order any of these measures, Mr. Garza asserted that the testimony of the four homicides should be suppressed, given the defense's inability to mount an adequate defense to them.

The suspicion with which the law regards the testimony of accomplice witnesses is axiomatic:

The policy behind the giving of an accomplice instruction is "no more

18

> than a commonsense recognition that an accomplice may have a special interest in testifying, thus casting doubt upon his veracity." The accomplice is thought to have a "motive to lie" since he is in a position to extricate himself by incriminating his partner in crime. Moreover, the possibility of leniency in plea agreements and sentencing renders an accomplice's testimony one to be considered with great care and caution.

*United States v. Hinds*, 662 F.2d 362, 370 (5th Cir. 1981) (citing *Cool v. United States*, 409 U.S. 100, 103 (1972)); *see also Tillery v. United States*, 411 F.2d 644, 646 (5th Cir. 1969) ("Accomplice testimony should always be scrutinized carefully by the jury because of its inherent untrustworthiness. . . . When the accomplice testimony constitutes the only damning evidence against a defendant, the exigency for a cautionary instruction is even more compelling."). Given the lack of any meaningful corroboration of the witnesses' claims that Mr. Garza was involved in these murders, it was especially important that Mr. Garza be given adequate tools to probe the reliability of this testimony.

The Government's Answer constructs straw men by repeatedly mischaracterizing Mr. Garza's claim, then citing authorities which allegedly foreclose it. On page 19 of the Answer, the Government asserts that Mr. Garza seeks a ruling that "the United States was obligated to conduct further discovery for the defense." It is true that Mr. Garza requested the Court to order the United States to provide exculpatory information regarding suspects who had been arrested

for the Mexican homicides (Motion at 10), but this is far from requesting broad discovery. Similarly, the Government hints that Mr. Garza's request for resources with which to conduct an investigation in Mexico was a subterfuge to delay or defeat trial. Answer at 23 (citing cases in which defendants asserted their inability to subpoena foreign witnesses as a bar to criminal prosecution). The most drastic of Mr. Garza's requested remedies (and one that was requested only if the district court was unwilling to provide adequate resources for Mr. Garza's investigation of the killings), that of suppressing the four foreign murders, would of course not have prevented the United States from seeking to convict Mr. Garza, or even from seeking the death penalty. It would simply have prevented the Government from using questionable testimony in support of the death sentence.

The Government also uses the very Catch-22 that deprived Mr. Garza of a fundamentally fair sentencing trial. *See, e.g.*, Answer at 20 ("Garza makes no allegation and presents no proof that the Mexican authorities were *in fact* in possession of *any* exculpatory evidence that was not disclosed to him."); *id.* at 21 ("Garza makes no allegation and has presented no evidence that he ever even attempted any independent investigation in Mexico much less that he was in some way prohibited from making such investigation."); *id.* at 23 ("Garza does not now identify any witness whose testimony he was unable to procure for his defense or

20

who would have even been willing to testify on his behalf.").

These assertions do nothing more than restate the heart of Mr. Garza's claim: that he was deprived by the Court's failure to authorize requisite investigation and by his lack of subpoena power from even beginning an adequate investigation. Mr Garza pointed out to the district court the impossibility of conducting a meaningful investigation into four separate murders which occurred in a foreign country without substantial added investigative help or other mechanisms to ensure an adequate defense, but the Government dismisses these legitimate concerns as admissions that Mr. Garza did not exercise "due diligence." Mr. Garza's lawyers exercised due diligence in asking for the help they needed to properly frame further evidentiary requests and, eventually, a substantive defense. Having done so, their diligence cannot be faulted under circumstances in which "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is . . . small." *United States v. Cronic*, 466 U.S. 648, 659 (1984).

## VI.    Conclusion

Because of the myriad procedural and substantive defects with this Court's ruling, this Court should grant Mr. Garza's Rule 59(e) Motion, reopen the proceedings, and alter its judgment to provide findings of fact and conclusions of

law, to decide which claims Mr. Garza is entitled to a COA on, and to revise its erroneous conclusion that Mr. Garza is not entitled to relief on any of his claims.

Respectfully submitted,

*Greg Wiercioch*

with express permission
by: _____ (Andrew Hammel)

Steven C. Losch
906 Delia Drive
Longview, Texas 75601
903-234-1373

Gregory W. Wiercioch
412 Main Street, Suite 1150
Houston, Texas 77002
TEL (713) 222-7788
FAX (713) 222-0260

Counsel for Juan Raul Garza

22

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of April 1998, a true and correct copy of the foregoing pleading was served upon opposing counsel by depositing the same with Federal Express for overnight delivery to:

Paula C. Offenhauser
Assistant United States Attorney
P.O. Box 61129
Houston, TX 77208-1129

*Greg Wiercioch*
with express permission
by: _____ (Andrew Hammel)

23

PACER Electronic Docket as of April 28, 1998 04:07:03 PM          Page 1

Proceedings include all events.
1:97cv273     Garza v. USA                                    CLOSED
                                                                     2255
                                                     CLOSED 2255

                          U.S. District Court
            TXS - Southern District of Texas (Brownsville)

              CIVIL DOCKET FOR CASE #: 97-CV-273

Garza v. USA                                         Filed: 12/01/97
Assigned to: Judge Filemon B. Vela
Demand: $0,000                        Nature of Suit:  510
Lead Docket: None                     Jurisdiction: US Defendant
Dkt# in other court: None

Cause: 28:2255 Motion to Vacate Sentence

JUAN RAUL GARZA
      petitioner

   v.

UNITED STATES OF AMERICA            Paula C Offenhauser
      respondent                    713-718-3302
                                    [COR LD NTC]
                                    US Attorneys Office
                                    P O Box 61129
                                    Houston, TX 77208
                                    713-567-9364

PACER Electronic Docket as of April 28, 1998 04:07:03 PM          Page 2

Proceedings include all events.
1:97cv273      Garza v. USA                                    CLOSED
                                                                 2255
12/1/97  1        MOTION to vacate under 28 U.S.C. 2255 by Juan Raul Garza,
                  Motion Docket Date 12/21/97 [1-1] motion , filed. (mguz)
                  [Entry date 12/12/97]

4/9/98   2        ANSWER to Complaint by USA (Added attorney Paula C
                  Offenhauser), filed. (mguz)

4/9/98   3        ORDER  denying [1-1] motion to vacate under 28 U.S.C. 2255
                  , entered; Parties notified. ( signed by Judge Filemon B.
                  Vela ) (mguz) [Entry date 04/15/98]

4/9/98   --       Case closed (mguz) [Entry date 04/15/98]

4/20/98  4        MOTION for relief from judgment by Juan Raul Garza Paula
                  C Offenhauser for respondent USA, Motion Docket Date
                  5/10/98 [4-1] motion , filed. (mguz)

[END OF DOCKET: 1:97cv273]